RECEIVED NOV - 3 2011 CLERK, U.S. DISTRICT COURT WESTERN DISTRICT OF TEXAS BY_____ DEPUTY CLERK

FILED NOV - 3 2011 CLERK, U.S. DISTRICT COURT WESTERN DISTRICT OF TEXAS BY_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

JOE W. AND DOROTHY DORSETT
BROWN FOUNDATION and
CHAMBERS MEDICAL FOUNDATION

CIVIL NO.: A-11-CA-807-SS

VERSUS

FRAZIER HEALTHCARE V, L.P.; and
FRAZIER HEALTHCARE III, L.P.; and
FRAZIER AFFILIATES III, L.P.; and
TREVOR MOODY; and ALAN FRAZIER;
and STEVEN TALLMAN; and GUY MAYER;
and NATHAN EVERY; and JEFFREY NUGENT

## AMENDED COMPLAINT FOR BREACH
## OF FIDUCIARY DUTY AND CONSPIRACY

NOW COMES plaintiffs the Joe W. and Dorothy Dorsett Brown Foundation and the Chambers Medical Foundation (collectively "plaintiffs") by and through their undersigned attorney, and for a complaint against defendants Frazier Healthcare V, L.P., Frazier Healthcare III, L.P., Frazier Affiliates III, L.P., Trevor Moody, Alan Frazier, Steven Tallman, Guy Mayer, Nathan Every, and Jeffery Nugent and states and alleges as follows:

## I.
## PARTIES

1.      Plaintiff, the Joe W. and Dorothy Dorsett Brown Foundation, is a non-profit corporation organized under the laws of the State of Louisiana.

2.      Plaintiff, the Chambers Medical Foundation is a non-profit trust organized under the laws of the State of Louisiana.

3. Upon information and belief, defendant Trevor Moody is an individual of legal age and is domiciled within the state of Washington. Mr. Moody is employed by Frazier Healthcare Ventures and is a director on the Board of Directors for Ascension.

4. Upon information and belief, defendant Alan Frazier is an individual of legal age and is domiciled within the state of Washington. Mr. Frazier is the managing partner of Frazier Healthcare Ventures and is a director on the Board of Directors for Ascension.

5. Upon information and belief, defendant Steven Tallman is an individual of legal age and is domiciled within the state of Washington. Mr. Tallman is employed by Frazier Healthcare Ventures and is a director on the Board of Directors for Ascension.

6. Upon information and belief, defendant Guy Mayer is an individual of legal age and is domiciled within the state of Texas. Mr. Mayer is CEO of Ascension and is a director on the Board of Directors for Ascension.

7. Upon information and belief, defendant Nathan Every is an individual of legal age and is domiciled within the state of Washington. Mr. Every is a general partner of Frazier Healthcare Ventures and is a director on the Board of Directors for Ascension.

8. Upon information and belief, defendant Jeffrey Nugent is an individual of legal age and is domiciled within the state of California. Mr. Nugent works as a consultant for Frazier Healthcare Ventures and is a director on the Board of Directors for Ascension.

9. Upon information and belief, defendant Frazier Healthcare V, L.P. ("Frazier Healthcare V"), is a partnership with its address of 601 Union Street, Suite 3200, Seattle, Washington, 98101. Frazier Healthcare V, L.P., may be served upon its agent, Mr. Alan D. Frazier at 601 Union Street, Suite 3200, Seattle, Washington, 98101.

10. Upon information and belief, defendant Frazier Healthcare III, L.P. ("Frazier Healthcare III"), is a partnership with its address of 601 Union Street, Suite 3200,

Seattle, Washington, 98101. Frazier Affiliates III, L.P., may be served upon its agent, Mr. Alan D. Frazier at 601 Union Street, Suite 3200, Seattle, Washington, 98101.

11. Upon information and belief, defendant Frazier Affiliates III, L.P. ("Frazier Affiliates"), is a partnership with its address of 601 Union Street, Suite 3200, Seattle, Washington, 98101. Frazier Affiliates III, L.P., may be served upon its registered agent, Mr. Alan D. Frazier at 601 Union Street, Suite 3200, Seattle, Washington, 98101.

## II.
## JURISDICTION

12. Subject matter jurisdiction is vested in this Court on the basis of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. This action is not a collusive one to confer jurisdiction that would not otherwise exist.

## III.
## VENUE

13. Venue is proper in the United States District Court for the Western District of Texas under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Texas.

## IV.
## FACTUAL BACKGROUND

14. Ascension Orthopedics, Inc. ("Ascension") is a Delaware corporation which was founded in December of 1996. Ascension's predecessor was Ascension Biomedical, Inc., which was established in May of 1992 and was merged into Ascension upon its founding in 1996. Ascension was formed to design, develop, manufacture, and market small joint orthopedic implants made of pyrocarbon for the hand, foot, wrist, elbow, and shoulder to address the needs of osteoarthritis, rheumatoid arthritis, and post-trauma patients.

Ascension is managed by a board of directors. Ascension has its principal place of business in Austin, Texas.

15. The Joe W. and Dorothy Dorsett Brown Foundation (the "Brown Foundation") is a non-profit organization established in 1958 and supports academic medical research at universities, independent laboratories, and other scientific organizations. The Brown Foundation is highly involved in funding medical and environmental research; housing for the homeless; organizations who care for the sick, hungry or helpless; religious and educational institutions; and organizations and groups concerned with improving local communities.

16. The Chambers Medical Foundation ("Chambers Medical") is a non-profit organization established in 1990, and which supports the development and advancement of medical and scientific knowledge, practices, and technologies.

17. At all times relevant to this Complaint, the Brown Foundation and Chambers Medical were major stockholders of Ascension.

18. Throughout its operation, Ascension has issued several categories of stock, namely: Class A Common Stock, Class B Common Stock, Series A Preferred Stock, Series A-1 Preferred Stock, Series B Preferred Stock, Series C Preferred Stock, Series D Preferred Stock, and as of 2011, Series E Preferred Stock.

19. In the event of liquidation, dissolution, or winding down of Ascension, distributions to stockholders are made in the following preferential order: Series E, Series D, Series C, Series B, Series A, Series A-1, and then Common Stock.

20. Frazier Healthcare Ventures is a healthcare private equity fund based in Seattle Washington. Frazier Healthcare Venture has invested in Ascension through its affiliates, defendants Frazier Healthcare V, Frazier Healthcare III, and Frazier Affiliates

III (collectively the "Frazier Investors"). The Frazier Investors control a majority of the stock of Ascension, including in excess of 80% of the Series D Preferred Stock and over 85% of Series E Preferred Stock.

21.     In late 2007, the Frazier Investors participated in a Series D Preferred Stock offering by Ascension and purchased over 80% of the Series D Preferred Stock sold at this offering. Through this Series D Preferred Stock offering and some redemption of common stock, the Frazier Investors obtained a majority of the voting power of Ascension's outstanding preferred and common stock. This effectively gave the Frazier Investors control of Ascension and its Board of Directors.

22.     During this Series D stock sale, the Frazier Investors caused the Ascension Articles of Incorporation to be amended to increase the Board of Directors of Ascension from five to six members. The Frazier Investors, by virtue of their majority stock interest, were able to control which directors were placed on the board, and thus had effective control of Ascension. Of the six members of the Board of Directors, a majority of those directors were employed by or affiliated with Frazier Healthcare Ventures and/or the Frazier Investors. Upon information and belief, the current or former known members of the Ascension Board of Directors with ties to the Frazier Investors are Trevor Moody, Alan Frazier, Steven Tallman, Guy Mayer, Nathan Every, and Jeffrey Nugent (collectively the "Frazier Directors").

23.     Upon taking control of Ascension, the Frazier Investors began to look for an exit strategy whereby they could maximize their investment in Ascension. Beginning in January of 2010, the Frazier Directors caused Ascension to enter into a series of "Bridge Financing Agreements" whereby Frazier Healthcare V provided a series of usurious "loans" with Ascension. Under the terms of the Bridge Financing Agreements, Frazier

Healthcare V loaned Ascension $14.25 million dollars, in connection with a series of notes between Frazier Healthcare V and Ascension. Each note bore an annual interest rate of 10% and entitled the holder to receive 300% of the outstanding principal plus all accrued and unpaid interest should Ascension be liquidated, sold, or have substantially all of its assets acquired. The total amount loaned by Frazier Healthcare V to Ascension was $14.25 million dollars in the following amounts:

| Noteholder: | Date of Note: | Principal Amount of Note |
| --- | --- | --- |
| Frazier Healthcare V, LP | January 4, 2010 | $4,093,569 |
| Frazier Healthcare V, LP | January 29, 2010 | $906,431 |
| Frazier Healthcare V, LP | July 16, 2010 | $2,500,000 |
| Frazier Healthcare V, LP | November 18, 2010 | $2,000,000 |
| Frazier Healthcare V, LP | January 14, 2011 | $1,000,000 |
| Frazier Healthcare V, LP | January 31, 2011 | $1,750,000 |
| Frazier Healthcare V, LP | March 16, 2011 | $2,000,000 |

An additional $1.25 million dollars and $750,000 was loaned by the Mayo Clinic and CMC Master Fund, L.P., respectively, under the same terms bringing the total amount loaned under the Bridge Financing Agreement to $16.25 million dollars.

24. Upon information and belief, in the summer of 2011, the Frazier Directors, becoming concerned about the usurious nature of these notes and the bridge financing agreements, caused Ascension to convert the above notes into shares of Series E Preferred Stock. The terms of the Series E Preferred Stock were identical to that of the Series D Preferred Stock in that it had a liquidation preference of 300% of the purchase price of $2.39 a share plus paid an annual dividend of 10% of the original purchase price.

25. In an effort to raise an additional $1.75 million dollars, the Frazier Directors then caused Ascension to offer another stock offering of Series E Preferred Stock, under the same terms, but made it only available to certain investors (the "Series E Financing").

The Series E stock sold through the Series E Financing had a stock price of $2.39 per share and a liquidation preference of $7.17 per share (equal to 300% of the $2.39 purchase price) plus paid an annual dividend of 10% of the original purchase price.

26.     During the Series E Financing, Frazier Healthcare V, LP purchased over 95% of the offered Series E Preferred Stock. In all, between the Bridge Financing Agreement and the Series E Financing, a total of $18 million dollars was invested into Ascension, the vast majority coming from the Frazier Investors, with a guaranteed 300% return of that money upon sale or merger of Ascension and a 10% annual dividend.

27.     Upon information and belief, the Frazier Directors caused Ascension to enter into the Bridge Financing Agreements and the Series E Financing so as to infuse capital into Ascension for the purpose of making Ascension more attractive to a potential buyer through rapid growth and expansion in a short period of time as well as to provide required capital to Ascension so that a sale/merger could be completed. In fact, the Series E Financing was offered at such a time when Ascension was actively seeking and expecting to receive multiple bids for the company.

28.     Upon information and belief, the Frazier Directors engaged in this conduct so that in the event that Ascension is sold or merged with another company, then the Frazier Investors and Frazier Healthcare V would obtain a 300% return on their investment into Ascension through the Bridge Financing Agreements and the Series E Financing.

29.     Upon information and belief, these actions by the Frazier Directors were done without the assent of the disinterested stockholders, without a fairness opinion being prepared to set forth the clear conflict of interest between the Frazier Directors, the

Frazier Investors, and Ascension, and without a stockholder meeting to explain and fully disclose said actions.

30. Upon information and belief, on July 5, 2011, the Frazier Investors unilaterally voted as majority stockholders in Ascension to waive the conflict between Alan Frazier as member of the Ascension Board of Directors and Frazier Healthcare V for which Alan Frazier held an interest. Plaintiffs did not participate in this vote and did not receive notice of this action until August 23, 2011.

31. The Frazier Directors' actions of causing Ascension to incur significant debt in an effort to make Ascension more attractive to a buyer were a departure from prior management of Ascension. Prior to Frazier Investors obtaining control, Ascension was a company growing at a steady and sustainable pace. In 2005, Ascension posted its first profit which was accomplished through careful control of expenses through a period of revenue increases. At the end of 2005, Ascension owned assets of $9.1 million dollars with liabilities of $1.87 million dollars and total owner's equity was approximately $8 million dollars. Ascension continued to grow and as of December 31, 2008, Ascension possessed $20 million dollars in assets and owed $2.3 million dollars in liabilities. The total stockholder equity in Ascension was $17.8 million dollars. In only two years and due in part to the high interest/dividend rate being paid to Frazier Investors for the Bridge Financing Agreement and the Series E Financing, the Frazier Directors caused Ascension to occur significant increase in liabilities such that as of December 31, 2010, Ascension possessed $18.7 million dollars in assets but owed $15.4 million dollars in liabilities. Further, in just two years, stockholder equity had dropped to $1.5 million dollars. As of June 30, 2011, stockholder equity had eroded even further, dropping to a negative $4,328,060. In a little over two years, the Frazier Directors and Frazier

Investors caused stockholders in Ascension to lose approximately $22 million dollars in total owner's equity. Due to the mismanagement of the Frazier Directors, Ascension posted a net loss of over $8 million dollars in the first half of 2011 (January 1, 2011 until June 30, 2011). This huge amount of loss made Ascension unsustainable as a company absent a sale or additional capital infusion.

32.  In an effort to save Ascension and infuse more capital into it, Ascension's management pursued a number of new investors. In early 2011, Ascension's management ultimately negotiated a royalty and investment arrangement with Paul Capital, a private equity investment firm. These arrangements would have saved Ascension as a viable company. When Ascension management presented these arrangements to the Ascension Board of Directors, it was approved by the disinterested members of the Board of Directors. However, the Frazier Investors, using its control as majority stockholders, blocked the arrangements with Paul Capital because this arrangement would not have provided a 300% return on the Frazier Investor's investment. The Frazier Investors then used their position as majority stock holders to force a sale of Ascension on an expedited basis.

33.  At the direction of the Frazier Investors and the Frazier Directors, Ascension entered into an agreement with a company named Integra LifeSciences ("Integra"). On August 27, 2011, Ascension entered into a Agreement and Plan of Merger with Integra whereby Ascension would become a wholly owned subsidiary of Integra. Upon information and belief, the purchase amount for Ascension will equal the total liquidation amounts of the Series E Preferred Stocks of which Frazier Investors own the vast majority. Nearly all the funds of the sale will be consumed by the Frazier Investors

due to the 300% return accorded the notes in the Bridge Financing Agreement and the Series E Financing.

34. Notably, in a letter to stockholders sent out by Ascension on September 12, 2011, Ascension explicitly stated that holders of common stock of Ascension will receive no consideration for their common stock during the merger with Integra.

35. In August of 2011, the Brown Foundation requested, pursuant to Title 8, Section 220 of the Delaware Code, to view the records of Ascension for a lawful purpose but was unlawfully denied access to those records until it agreed to enter into a non-disclosure agreement which would have prohibited the Brown Foundation from using said information in a shareholder derivative suit. Access was denied even though investigating corporate mismanagement is a proper purpose for seeking access to Ascension's books and records. *See King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1145 (Del. 2011).

36. As noted above, a majority of the Ascension Board of Directors has a material financial interest in obtaining the 300% profits of the Bridge Financing Agreements and Series E Financing and are thus incapable of acting independently. The board of directors is beholden to and dominated by Frazier Investors, and it was for their interest, not that of Ascension or minority stockholders, that the Frazier Directors approved the Bridge Financing Agreements, the Series E Financing, the blocking of the investment by Paul Capital, and the sale/merger of Ascension to Integra. These decisions were not the product of a valid exercise of business judgment but done in an effort to maximize the Frazier Investors profits at the expense of the plaintiffs and the remaining stockholders in Ascension.

37. Moreover, upon information and belief, the Frazier Directors will receive significant monetary compensation out of the proceeds of the sale/merger with Integra, providing further incentive for the Frazier Directors to acts in their own best interest and that of the Frazier investors to the detriment of the plaintiffs and other stock holders.

## V.
## Count I- Breach of Fiduciary Duties by Frazier Directors

38. As part of Count 1, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

39. The Brown Foundation and Chambers Medical are major stockholders of Ascension and have collectively invested millions into Ascension during its existence. As members of the Board of Directors of Ascension, the Frazier Directors owe the fiduciary duties of due care, good faith, and loyalty to the plaintiffs.

40. As previously alleged, the Frazier Directors intentionally and negligently violated their fiduciary duties in their management of Ascension. The Frazier Directors' indifference to their corporate responsibilities, as previously alleged, resulted in the mismanagement of Ascension, waste of its assets, and placed Ascension on an unsustainable path that, without outside intervention, doomed it to failure. In just a few short years under their control, the Frazier Directors took Ascension from a profitable and growing company to one that was no longer viable without outside intervention, all in an effort to maximize the profits of the Frazier Investors at the expense of the Brown Foundation, Chambers Medical, and other stockholders.

41. The Frazier Directors were negligent and committed a wasting of corporate assets by entering into the Bridge Financing Agreements and Series E Financing which caused

Ascension to incur significant debt and placed an unsustainable strain on Ascension's assets. The Frazier Directors then used the proceeds from the Bridge Financing Agreements and Series E Financing to rapidly expand Ascension to attract a potential buyer and complete any sales/merger process with that buyer. However, Ascension's cash flow was unable to sustain the rapid expansion thereby dooming Ascension as a viable company absent sale or outside intervention. These actions were not in the best interest of Ascension, the Brown Foundation, Chambers Medical, or the other stockholders, but in the best interest of the Frazier Investors and the Frazier Directors, who stand to gain 300% off their investments into Ascension made through the Bridge Financing Agreements and Series E Financing when Ascension is sold or merged.

42. The defendants further violated their fiduciary duties to the plaintiffs by effectively eroding all of the plaintiffs' stockholder equity in Ascension by entering into the Bridge Financing Agreements and Series E Financing. Because the Series E Preferred Stock had a liquidation preference above all other stock and carried a 300% return, the Frazier Directors ensured that any proceeds of any sale/merger would go almost wholly to the Frazier Investors. Moreover, the Frazier Directors conspired with the Frazier Investors to block any efforts to save Ascension other than through a sale by blocking the infusion of additional capital from entities such as Paul Capital. This was not done in the best interest of Ascension or plaintiffs, but in an effort to ensure the Frazier Investors obtained the 300% return from liquidation of its Series E Preferred stock.

43. Upon information and belief, any proceeds generated by the sale or merger of Ascension with Integra are or will be wholly consumed by the 300% redemption of Series E Preferred stocks. Thus, through the actions of the Frazier Directors, the

plaintiffs' stock was rendered essentially worthless, and it will receive none of the proceeds generated from the sale or merger of Ascension.

44. Moreover, upon information and belief, the Frazier Directors will receive significant monetary compensation out of the proceeds of the sale/merger with Integra, and therefore acted in their own best interest and that of the Frazier investors to the detriment of the plaintiffs and other stock holders.

45. All of the aforementioned actions and failures to act by the Frazier Directors constitute a breach of their fiduciary duties to the Brown Foundation and Chambers Medical, gross mismanagement and abuse of control of Ascension, waste of Ascension's assets, and unjustly enriched the Frazier Investors at the expense of the Brown Foundation and Chambers Medical.

### Count II- Breach of Fiduciary Duties by Frazier Investors

46. As part of Count 2, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

47. The Frazier Investors are the major stockholders in Ascension and exercise managerial control over Ascension. As such, the Frazier Investors have a fiduciary duty of good faith and fair dealing to the plaintiffs as a minority stockholder.

48. The Frazier investors violated their fiduciary duties to the plaintiffs by effectively eroding all of plaintiffs' stockholder equity in Ascension by entering into and causing Ascension to enter into the Bridge Financing Agreements and Series E Financing. Because the Series E Preferred Stock had a liquidation preference above all other stock and carried a 300% return, the Frazier Investors ensured that any proceeds of a sale or merger of Ascension would go almost wholly to the Frazier Investors. The Frazier

Investors then used their managerial control to cause Ascension to use the proceeds from the Bridge Financing Agreements and the Series E Financing to rapidly expand Ascension to make it more attractive to a buyer. This expansion, however, caused a wasting of Ascension's assets, and placed Ascension on an unsustainable path that, without outside intervention, doomed it to failure. The Frazier Investors then blocked any efforts to save Ascension other than through a sale or merger by blocking the infusion of additional capital from entities such as Paul Capital. This was not done in the best interest of Ascension or plaintiffs but in an effort to ensure the Frazier Investors obtained the 300% return from liquidation of its Series E Preferred stock.

49. Upon information and belief, any proceeds generated by the sale or merger of Ascension with Integra are or will be wholly consumed by the 300% redemption of Series E Preferred stocks. Thus, through the actions of the Frazier Investors, plaintiffs' stock was rendered essentially worthless, and plaintiffs will receive none of the proceeds generated from the sale or merger of Ascension.

50. All of the aforementioned actions and failures to act by the Frazier Investors constitute a breach of their fiduciary duties as majority stockholders to plaintiffs as minority stockholders, and unjustly enriched the Frazier Investors at the expense of the plaintiffs.

### Count III- Conspiracy

51. As part of Count III, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

52. The Frazier Directors and the Frazier Investors each owed fiduciary duties to the plaintiffs and each was aware of the fiduciary duties of the other.

53. The Frazier Directors engaged in a conspiracy with Frazier Investors to commit the actionable offenses described herein. As set forth in greater detail above, the Frazier Directors caused Ascension to enter into the Bridge Financing Agreement and Series E Financing with terms which were unfavorable to Ascension and its stockholders to the benefit of the Frazier Investors. The Frazier Investors and Frazier Directors then conspired to force Ascension into a sale by causing Ascension to become unsustainable as a company and rejecting infusion of alternative capital which would have allowed Ascension to continue to operate. This was done so the Frazier Investors could receive the 300% return on its investment in Ascension through redemptions of its Series E Preferred stocks.

54. The result of the actions of the Frazier Directors and Frazier Investors was to completely eviscerate the value of the stock held by plaintiffs upon any sale or merger of Ascension.

## Count IV- Unjust Enrichment

55. As part of Count III, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

56. As a result of the actions listed above, the Frazier Investors and Frazier Directors were unjustly enriched to the detriment of the plaintiffs and the other stockholders in Ascension.

## VII.
## Jury Demand

57. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand trial by jury in connection with the claims herein.

## VIII.
## Relief Requested

WHEREFORE, petitioners the Brown Foundation and Chambers Medical pray that this Honorable Court issue a judgment in favor of the plaintiffs against the Frazier Directors and the Frazier Investors awarding all damages to the plaintiffs as are reasonable in the premises, together with legal interest thereon from date of judicial demand until paid, attorney's fees, plus all costs of these proceedings.

Respectfully submitted;

Hymel Davis & Petersen, LLC

_____
Joseph E. Blackwell, TX Bar #24045504
Attorney for the Brown Foundation and
Chambers Medical Foundation
10602 Coursey Boulevard
Baton Rouge, LA  70816
Telephone: 225-298-8118
Fax: 225-298-8119
jblackwell@hymeldavis.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of November, 2011, a true and correct copy of the foregoing pleading was forwarded by certified mail to Clay Basser-Wall, the attorney for Trevor Moody, Alan Frazier, Steven Tallman, Guy Mayer, Nathan Every, and Jeffrey Nugent at the address of Wilson Sonsini Goodrich & Rosati, P.C., 900 South Capital of Texas Highway, Las Cimas IV, Fifth Floor, Austin, TX 78746-5407; and Nicholas Even, the attorney for Frazier Affiliates III, LP, Frazier Healthcare III, LP, and Frazier Healthcare V, LP at the address of Haynes and Boone, LLP, 2323 Victory Avenue, Suite 700, Dallas, TX 75219.

_____
Joseph E. Blackwell