IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2012 FEB 13 AM 11:03

JOE W. and DOROTHY DORSETT BROWN
FOUNDATION,

        Plaintiff,

-vs-

FRAZIER HEALTHCARE V, L.P.; FRAZIER
HEALTHCARE III, L.P.; FRAZIER
AFFILIATES III, L.P.; TREVOR MOODY;
ALAN FRAZIER; STEVEN TALLMAN; GUY
MAYER; NATHAN EVERY; and JEFFREY
NUGENT,

        Defendants.

Case No. A-11-CA-807-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Nathan Every, Alan Frazier, Guy Mayer, Trevor Moody, Jeffrey Nugent, and Steven Tallman (collectively, Director Defendants)'s Motion to Dismiss [#19], Defendants Frazier Affiliates III, L.P., Frazier Healthcare III, L.P., and Frazier Heathcare V, L.P. (collectively, Frazier Entities)'s Motion to Dismiss [#20], Plaintiffs Chambers Medical Foundation, and Joe W. & Dorothy Dorsett Brown Foundation's response to both motions [#28], and the Defendants' respective replies [##31, 32] thereto. Having considered the documents, the arguments of counsel at a hearing held on February 3, 2012, the file as a whole, and the relevant law, the Court issues the following opinion and orders, granting the motions to dismiss.

## Background

The plaintiffs were investors in Ascension Orthopedics, Inc.[1] They are suing three other former shareholder entities (Frazier Affiliates III, L.P, Frazier Healthcare III, L.P., and Frazier Healthcare V, L.P.), and six former directors, for breach of fiduciary duty. The Directors and Frazier Entities are alleged to all be interrelated. The pleadings are confusing on this point, but apparently five of the Directors are alleged to employees of the Frazier Entities, and all six were allegedly nominated by those Entities.

Over the course of two years, one of the Frazier Entities[2] made a series of loans to Ascension. These loans had a term requiring a 300% return if Ascension merged with another company, and 10% annual interest. Ascension exchanged the loans for a Class E series of preferred stock, which likewise had a 300% return clause in the event of a merger or acquisition,[3] and a 10% annual dividend. In all, the Frazier Entities loaned or invested some $15.5 million on these terms, and apparently collectively held 85% of the Class E stock, as well as 80% of the next priority stock, the Class D preferred.

Allegedly, these loans damaged Ascension's viability as a company, requiring further outside investment, or sale. At least one potential outside investor, Paul Capital, was apparently refused by the Defendant Directors. Instead, Ascension was sold or merged into another company, Integra

---

[1] Defendant asserts they are no longer shareholders because Ascension had merged with a company called Integra. Apparently, the holders of common stock "recieve[d] no consideration" during the merger, Pl.'s 1st Am. Compl. [#14] at 10., and at the hearing, counsel for the Defendants represented that all common stock was "extinguished" as a result of the merger.

[2] Frazier Healthcare V, L.P.

[3] There was also a subsequent issuance of additional Class E shares, apparently on the same terms.

Lifesciences. The purchase price paid by Integra sufficed to cover, in whole or in part, the 300% return guaranteed to the Class E shareholder (Frazier Healthcare V, L.P) (which had first priority) but did not extend to any other classes of stock, including those shares held by the Plaintiffs. Plaintiffs allege there was no "assent of the disinterested stockholders," regarding any conflict of interest between the Defendant Directors and the Frazier entities, and no stockholder meeting. Pls.' Am. Compl. [#14] at 7–8. Plaintiffs assert the value of their own—apparently significant—investment in Ascension was destroyed as a result. Plaintiffs raise four claims arising out of these facts: (1) the Defendant Directors breached their fiduciary duties of "due care, good faith, and loyalty" to the Plaintiffs, (2) the Frazier entities breached a so-called "fiduciary duty of good faith and fair dealing," (3) all defendants conspired with each other to breach the fiduciary duties of the others, and (4) unjust enrichment. All Defendants have moved for dismissal of these claims under Rule 12(b)(6).

## Analysis

### I. Legal Standard

#### A. Motion to Dismiss under Rule 12(b)(6)

In deciding whether to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the Court must take the factual allegations as true, resolving any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Mere legal conclusions, however, are not entitled of the presumption of truth—they must be supported by factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

face." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (internal citations omitted).

**B.    Derivative versus Direct Causes of Action Under Delaware Law**

Ascension was a Delaware corporation, and the parties appear to agree that Delaware law thus governs the substance of this suit. Under Delaware law, whether a stockholder's claim is direct or derivative in nature turns on a two-part test: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). Under the first part, in order to assert a direct claim, a plaintiff-shareholder must allege harm "separate and distinct from that suffered by other shareholders . . . which exists independently of any right of the corporation." *Id.* at 1035. Under the second part, the plaintiff-shareholder must demonstrate that he, not the corporation, would receive the benefit of any recovery or remedy. *Id.* at 1033.

Corporate merger generally eliminates a plaintiff-shareholder's standing to bring a derivative suit. *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984). This is because the derivative claim is a property right of the original corporation, and the right shifts to the acquiring corporation once a merger is consummated. *Id.* at 1044. Thus, claims post-merger will generally be subject to dismissal, unless the plaintiff-shareholder can demonstrate either of "two distinct circumstances." *Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008). Those are: (1) "where the claims asserted are direct, rather than derivative," or (2) under two exceptions to the rule announced in *Lewis*. *Id.* The *Lewis* exceptions are: "first, if the merger itself is the subject of a claim of fraud, being perpetrated merely to deprive shareholders of the standing to bring a derivative action; or second, if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise." *Id.* at 731 n.20 (citing *Lewis*, 477 A.2d at 1046 n.10).

Complicating the above framework, the Delaware Supreme Court has found some causes of action can be simultaneously direct *and* derivative in nature. *See Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006). *Gentile* laid out the following elements for a direct–derivative cause of action: "(1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders." *Id.* at 100.

The *Gentile* court went on to explain: "Because the shares representing the 'overpayment' embody both economic value and voting power, the end result of this type of transaction is an improper transfer—or expropriation—of economic value and voting power from the public

-5-

shareholders to the majority or controlling stockholder." *Id.* " A separate harm also results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest. As a consequence, the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited." *Id.* The *Gentile* court concluded: "In such circumstances, the public shareholders are entitled to recover the value represented by that overpayment—an entitlement that may be claimed by the public shareholders directly and without regard to any claim the corporation may have." *Id.*

II.    **Application**

A.    **Breach of Fiduciary Duty by the Director Defendants**

In their Amended Complaint, the Plaintiffs allege "The Frazier Directors' indifference to their corporate responsibilities, as previously alleged, resulted in the mismanagement of Ascension, waste of its assets, and placed Ascension on an unsustainable path that, without outside intervention, doomed it to failure." Pls.' Am. Compl. [#14] at 11. The Plaintiffs also allege the Defendant Directors "conspired with the Frazier Investors to block any efforts to save Ascension other than through a sale by blocking the infusion of additional capital from entities such as Paul Capital." *Id.* at 12. And "any proceeds generated by the sale or merger of Ascension with Integra are or will be wholly consumed by the 300% redemption of Series E Preferred stocks. Thus, through the actions of the Frazier Directors, the plaintiffs' stock was rendered essentially worthless, and it will receive none of the proceeds generated from the sale or merger of Ascension." *Id.* at 12–13.

Taking all of the foregoing as true, Plaintiffs have failed to state a claim for which relief can be granted, because the harm described is to Ascension, not to Plaintiffs, and is precisely the sort of

allegation which Delaware law considers to be derivative in nature.

The closest Plaintiffs come to stating a claim is the conclusion of their first claim: "All of the aforementioned actions and failures to act . . . unjustly enriched the Frazier Investors at the expense of the Brown Foundation and Chambers Medical." *Id.* at 13. This last at least manages to reach the general vicinity of a direct–derivative claim under *Gentile*. See *Gentile*, 906 A.2d at 100 ("A separate harm also results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest."). However, Plaintiffs have not articulated facts which would connect their conclusion "unjustly enriched the Frazier Investors at the expense of the Brown Foundation and Chambers Medical" to either the *Gentile* elements, or to the facts which have been pled.

**B.    Breach of Fiduciary Duty by Frazier Entities**

Plaintiffs' allegations against the Frazier Entities are virtually identical in content, and thus are derivative as well. This claim also comes close to, but does not, state a claim under *Gentile*.

**C.    Civil Conspiracy**

Plaintiffs' conspiracy claim makes only the conclusory allegation that the Defendant Directors and Frazier Entities "engaged in a conspiracy" to achieve the first two claims. Pls.' Am. Compl. [#14] at 15. As such, this claim is not only derivative, it is subject to dismissal for being conclusory as well. *See Twombly*, 550 U.S. 554–55.

**D.    Unjust Enrichment**

Finally, Plaintiffs' unjust enrichment claim is likewise conclusory and derivative: "As a result of the actions listed above, the Frazier Investors and Frazier Directors were unjustly enriched to the detriment of the plaintiffs and the other stockholders in Ascension." Pls.' Am. Compl. [#14] at 15.

## Conclusion

The Court concludes Plaintiffs have failed to state a claim for which relief can be granted, because all four claims, as pled, are derivative in nature or supported by only conclusory allegations. Thus, all four claims are DISMISSED. However, the Court believes Plaintiffs could potentially replead, either under the standards announced in *Gentile*, or other law, and therefore the Court GRANTS leave to file an amended complaint within thirty days of entry of this order.

Accordingly,

IT IS ORDERED that Defendants Nathan Every, Alan Frazier, Guy Mayer, Trevor Moody, Jeffrey Nugent, and Steven Tallman's Motion to Dismiss [#19] is GRANTED;

IT IS FURTHER ORDERED that Defendants Frazier Affiliates III, L.P., Frazier Healthcare III, L.P., and Frazier Heathcare V, L.P.'s Motion to Dismiss [#20] is GRANTED;

IT IS FINALLY ORDERED that Plaintiffs Chambers Medical Foundation, and Joe W. & Dorothy Dorsett Brown Foundation shall have THIRTY (30) days to file an amended complaint.

SIGNED this the 10th day of February 2012.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE