IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

JOE W. AND DOROTHY DORSETT
BROWN FOUNDATION and
CHAMBERS MEDICAL FOUNDATION

CIVIL NO.: A-11-CA-807-SS

VERSUS

FRAZIER HEALTHCARE V, L.P.; and
FRAZIER HEALTHCARE III, L.P.; and
FRAZIER AFFILIATES III, L.P.; and
TREVOR MOODY; and ALAN FRAZIER;
and STEVEN TALLMAN; and GUY MAYER;
and NATHAN EVERY; and JEFFREY NUGENT

## SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY, MINORITY SHAREHOLDER OPPRESSION, CONSPIRACY, AIDING AND ABETTING, AND UNJUST ENRICHMENT

NOW COME plaintiffs the Joe W. and Dorothy Dorsett Brown Foundation and the Chambers Medical Foundation (collectively "plaintiffs") by and through their undersigned attorney, and for a second amended complaint against defendants Frazier Healthcare V, L.P., Frazier Healthcare III, L.P., Frazier Affiliates III, L.P., Trevor Moody, Alan Frazier, Steven Tallman, Guy Mayer, Nathan Every, and Jeffery Nugent and state and allege as follows:

## I.
## PARTIES

1.      Plaintiff, the Joe W. and Dorothy Dorsett Brown Foundation, is a non-profit corporation organized under the laws of the State of Louisiana.

2.      Plaintiff, the Chambers Medical Foundation is a non-profit trust organized under the laws of the State of Louisiana.

3.      Upon information and belief, defendant Trevor Moody is an individual of legal age and is domiciled within the state of Washington.  Mr. Moody is employed by Frazier Healthcare Ventures and prior to its merger with Integra LifeSciences ("Integra"), was a director on the Board of Directors for Ascension Orthopedics, Inc. ("Ascension").

4.      Upon information and belief, defendant Alan Frazier is an individual of legal age and is domiciled within the state of Washington.  Mr. Frazier is the managing partner of Frazier Healthcare Ventures and prior to its merger with Integra, was a director on the Board of Directors for Ascension.

5.      Upon information and belief, defendant Steven Tallman is an individual of legal age and is domiciled within the state of Washington.  Mr. Tallman is employed by Frazier Healthcare Ventures and prior to its merger with Integra, was a director on the Board of Directors for Ascension.

6.      Upon information and belief, defendant Guy Mayer is an individual of legal age and is domiciled within the state of Texas.  Mr. Mayer is CEO of Ascension and prior to its merger with Integra, was a director on the Board of Directors for Ascension.

7.      Upon information and belief, defendant Nathan Every is an individual of legal age and is domiciled within the state of Washington.  Mr. Every is a general partner of Frazier Healthcare Ventures and prior to its merger with Integra, was a director on the Board of Directors for Ascension.

8.      Upon information and belief, defendant Jeffrey Nugent is an individual of legal age and is domiciled within the state of California.  Mr. Nugent works as a consultant for Frazier Healthcare Ventures and prior to its merger with Integra, was a director on the Board of Directors for Ascension.

9.      Upon information and belief, defendant Frazier Healthcare V, L.P. ("Frazier Healthcare V"), is a partnership with its address of 601 Union Street, Suite 3200, Seattle, Washington, 98101.

10.     Upon information and belief, defendant Frazier Healthcare III, L.P. ("Frazier Healthcare III"), is a partnership with its address of 601 Union Street, Suite 3200, Seattle, Washington, 98101.

11.     Upon information and belief, defendant Frazier Affiliates III, L.P. ("Frazier Affiliates"), is a partnership with its address of 601 Union Street, Suite 3200, Seattle, Washington, 98101.

## II.
## JURISDICTION

12.     Subject matter jurisdiction is vested in this Court on the basis of diversity of citizenship, 28 U.S.C. § 1332.  The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  This action is not a collusive one to confer jurisdiction that would not otherwise exist.

## III.
## VENUE

13.     Venue is proper in the United States District Court for the Western District of Texas under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Texas.

## IV.
## FACTUAL BACKGROUND

14.     Ascension is a Delaware corporation which was founded in December of 1996. Ascension's predecessor was Ascension Biomedical, Inc., which was established in May of 1992 and was merged into Ascension upon its founding in 1996.  Ascension was

formed to design, develop, manufacture, and market small joint orthopedic implants made of pyrocarbon for the hand, foot, wrist, elbow, and shoulder to address the needs of osteoarthritis, rheumatoid arthritis, and post-trauma patients. Ascension is managed by a board of directors.  Ascension has its principal place of business in Austin, Texas.

15.     The Joe W. and Dorothy Dorsett Brown Foundation (the "Brown Foundation") is a non-profit organization established in 1958 and supports academic medical research at universities, independent laboratories, and other scientific organizations.  The Brown Foundation is highly involved in funding medical and environmental research; housing for the homeless; organizations who care for the sick, hungry or helpless; religious and educational institutions; and organizations and groups concerned with improving local communities.

16.     The Chambers Medical Foundation ("Chambers Medical") is a non-profit organization established in 1990, and which supports the development and advancement of medical and scientific knowledge, practices, and technologies.

17.     At all times relevant to this Complaint, the Brown Foundation and Chambers Medical were major stockholders of Ascension.

18.     Throughout its operation, Ascension has issued several categories of stock, namely: Class A Common Stock, Class B Common Stock, Series A Preferred Stock, Series A-1 Preferred Stock, Series B Preferred Stock, Series C Preferred Stock, Series D Preferred Stock, and as of 2011, Series E Preferred Stock and Series E-1 Preferred Stock.[1]

19.     In the event of liquidation, dissolution, or winding down of Ascension, distributions to stockholders are made in the following preferential order:  Series E and

---

[1] Prior to the merger at issue in this case, plaintiffs owned shares of Series A-1, Series B, Series C, and Series D shares.

Series E-1, Series D, Series C, Series B, Series A, Series A-1, Class A Common, and Class B Common.

20.     Frazier Management L.L.C., also known as Frazier Healthcare Ventures ("Frazier Healthcare Ventures") is a healthcare private equity fund based in Seattle, Washington. Frazier Healthcare Ventures invests in various companies and funds using seven investment funds it manages.  Three of those funds are defendants Frazier Healthcare V, Frazier Healthcare III, and Frazier Affiliates (collectively the "Frazier Investors").  The Frazier Investors share the same address as Frazier Healthcare Ventures, which is 601 Union St #3200, Seattle, Washington 98101.   Prior to the merger at issue in this lawsuit, Frazier Healthcare Ventures, through the Frazier Investors, controlled a majority of the stock of Ascension, including in excess of 80% of the Series D Preferred Stock, 85% of Series E Preferred Stock, and 95% of Series E-1 Preferred Stock.   The website for Frazier Healthcare Ventures lists Ascension within its Medical Device Venture Portfolio.[2]

21.     The Frazier Investors took majority control of Ascension in late 2007 by purchasing over 80% of the Series D Preferred Stock offering.  In the Private Placement Memorandum released in connection with the Series D offering, Ascension issued the following notice to existing shareholders: "[f]ollowing the Series D financing, the Corporation anticipates that its stockholder Frazier Healthcare, and its affiliates will control a majority of the combined preferred stock classes and, therefore, have effective voting control of the Corporation."[3]  As predicted, through the Series D Preferred Stock offering and some redemption of common stock, the Frazier Investors obtained a

---

[2]  http://frazierhealthcare.com/venture_portfolio.html
[3]  *See* Exhibit 1, which is a copy of the Series D Private Placement Memorandum at 17.

majority of the voting power of Ascension's outstanding preferred and common stock. This effectively gave the Frazier Investors control of Ascension and its Board of Directors. The Frazier Investors specifically participated in the Series D Stock offering as a cross-investment with each other. By doing so, the Frazier Investors became the controlling stockholders of Ascension. Once the Frazier Investors became majority and controlling stockholders, they acted with joint purpose to maximize their investment into Ascension at the expense of the now minority stockholders. The Frazier Investors' 2007 Annual Reports demonstrate that the three Frazier Investors agreed to engage in cross-investments with each other to jointly acquire a majority ownership interest in Ascension.

22.     Through their investment, the Frazier Investors acted in concert to take control of Ascension. This fact is evidenced by the 2007 Annual Reports for each of the Frazier Investors. Frazier Affiliates' 2007 Annual Report notes its investment in Ascension's Series D Stock offering "was a 42% step-up from the prior round."[4] The Annual Report states Frazier Affiliates' investment was a "cross-cross over investment" with Frazier Healthcare V, L.P., who "led this round."[5] Notably, the Annual Report states that the "combined investment between Frazier Healthcare III, L.P., Frazier Healthcare V, L.P. and [Frazier Affiliates III] in Ascension is $31.3 million with a combined 52.3% ownership position."[6] The Annual Report also notes that defendants Trevor Moody, Steve Tallman, and Alan Frazier are "Frazier Healthcare Board Representative(s)."[7]

---

[4]  *See* Exhibit 2 which is a copy of the 2007 Annual Report for Frazier Affiliates III at 6.
[5]  Id.
[6]  Id.
[7]  Id. at 17.

Finally, the Annual Report cites Charter Ventures, Mayo Medical Ventures, and Brown Foundation as "Selected Co-Investors" in Ascension.[8]

23.     Frazier Healthcare V's 2007 Annual Report is nearly identical and also touts its investment in Ascension's Series D Stock offering.  The Annual Report also states the investment in Ascension was a "cross-over investment" which resulted in a "**combined ownership position of 52%**."[9]  The Annual Report also notes that defendants Trevor Moody, Steve Tallman, and Alan Frazier are the "Frazier Healthcare Board Representative(s)."[10]  Finally, the Annual Report lists Charter Ventures, Mayo Medical Ventures, and Brown Foundation as "Selected Co-Investors" in Ascension.[11]

24.     Frazier Healthcare III's 2007 Annual Report is also nearly identical and discusses its investment in the Series D Stock offering.   The Annual Report states Frazier Healthcare III's investment in Ascension was a "cross-cross over investment" which resulted in a "combined 52.3% ownership position."[12]  The Annual Report likewise notes that defendants Trevor Moody, Steve Tallman, and Alan Frazier are the "Frazier Healthcare Board Representative(s)."[13]  The Annual Report finally cites Charter Ventures, Mayo Medical Ventures, and Brown Foundation as "Selected Co-Investors" in Ascension.[14]

25.     All three Annual Reports cite "Frazier Healthcare Ventures" on the cover page, and each list Mr. Nader Naini as the General Partner for all three Frazier Investors.  All

---

[8]  Id.
[9]  *See* Exhibit 3 which is a copy of the 2007 Annual Report for Frazier Healthcare V at 7 (emphasis added).
[10]  Id. at 19.
[11]  Id.
[12]  *See* Exhibit 4 which is a copy of the 2007 Annual Report for Frazier Healthcare III at 6.
[13]  Id. at 18.
[14]  Id.

three Annual Reports also direct questions to Mr. Thomas Hodge, who is a partner with Frazier Healthcare Ventures and, upon information and belief, is the current manager of the Frazier Investors.

26.     An Ascension press release concerning the Series D Stock demonstrates the joint nature of the Frazier Investors' investment in Ascension, stating "[l]eading this Series D financing as the majority investor is Frazier Healthcare Ventures, one of the nation's leading providers of venture and growth equity capital to emerging healthcare companies."[15]  The release goes on to note that "Alan Frazier, General Partner and Founder of Frazier Healthcare Ventures will join Trevor Moody, General Partner of Frazier Healthcare, and Steven Tallman, Venture Partner of Frazier Healthcare on Ascension's Board of Directors."[16]

27.     As described above, all three Annual Reports cite to the cross-over investment between the Frazier Investors and their collective 52.3% ownership of Ascension.  Thus, through their cross investments, the Frazier Investors took a majority interest in Ascension and became controlling stockholders.

28.     After taking a controlling interest in Ascension, the Frazier Investors caused the Ascension Articles of Incorporation to be amended to increase the Board of Directors of Ascension from five to six members.  The Frazier Investors, by virtue of their majority stock interest, were able to control which directors were placed on the board, and thus had effective control of Ascension.  Upon information and belief, the Frazier Investors placed members on the Board of Directors who were employed by or affiliated with Frazier Healthcare Ventures and the Frazier Investors.  Upon information and belief,

---

[15]  A copy of this press release is attached as Exhibit 5.
[16]  Id.

the members of the Ascension Board of Directors with ties to the Frazier Investors are Trevor Moody, Alan Frazier, Steven Tallman, Guy Mayer, Nathan Every, and Jeffrey Nugent (collectively the "Frazier Directors").  Upon information and belief, these were the members of the Board of Directors of Ascension during the time period relevant to this Complaint, all had financial ties to Frazier Healthcare Ventures and the Frazier Investors, and all were placed on the Board through the Frazier Investor's insistence and control as majority stockholder.  For example, the Fourth Amended and Restated Voting Agreement, which the Frazier Investors required Ascension and all existing classes of preferred shareholders to execute as part of the Series E Financing, required that defendants Jeffery Nugent, Alan Frazier, Nathan Every, and Guy Mayer (as Ascension's CEO) be placed on the Ascension Board of Directors.

29.     Upon taking control of Ascension, the Frazier Investors and the Frazier Directors jointly conspired and agreed to undertake an equity extraction scheme whereby the economic value (equity) of Ascension would be extracted almost wholly from the minority stockholders to the controlling stockholders—the Frazier Investors.  This scheme took on two parts.  First, the Frazier Investors and Frazier Directors caused Ascension to overpay for investments Ascension received from the Frazier Investors, thereby shifting all equity of Ascension from the minority stockholders, including plaintiffs, to the Frazier Investors.  Second, the Frazier Directors and Frazier Investors forced a merger of Ascension so that the equity wrongfully extracted from the minority stockholders could be cashed out.

30.     In furtherance of their scheme, the Frazier Investors and Frazier Directors caused Ascension to enter into a series of "Bridge Financing Agreements" whereby Frazier Healthcare V provided a series of usurious "loans" with Ascension.  Under the terms of

the Bridge Financing Agreements, Frazier Healthcare V loaned Ascension $14.25 million

dollars, in connection with a series of notes between Frazier Healthcare V and

Ascension.  Each note bore an annual interest rate of 10% and entitled the holder to

receive 300% of the outstanding principal plus all accrued and unpaid interest should

Ascension be liquidated, sold, or have substantially all of its assets acquired.   The total

amount loaned by Frazier Healthcare V to Ascension was $14.25 million dollars in the

following amounts:

| Noteholder: | Date of Note: | Principal Amount of Note: |
| --- | --- | --- |
| Frazier Healthcare V, LP | January 4, 2010 | $4,093,569 |
| Frazier Healthcare V, LP | January 29, 2010 | $906,431 |
| Frazier Healthcare V, LP | July 16, 2010 | $2,500,000 |
| Frazier Healthcare V, LP | November 18, 2010 | $2,000,000 |
| Frazier Healthcare V, LP | January 14, 2011 | $1,000,000 |
| Frazier Healthcare V, LP | January 31, 2011 | $1,750,000 |
| Frazier Healthcare V, LP | March 16, 2011 | $2,000,000 |

An additional $ 1.25 million dollars and $750,000 was loaned by the Mayo Clinic and

CMC Master Fund, L.P., respectively, under the same terms.  This brought the total

amount loaned under the Bridge Financing Agreements to $16.25 million dollars.    The

CMC Master Fund is a part of Charter Ventures.   As noted above, both the Mayo Clinic

and Charter Ventures are "select co-investors" with the Frazier Investors in Ascension.

31.     Upon information and belief, in the summer of 2011, the Frazier Directors,

becoming concerned about the usurious nature of these notes and the Bridge Financing

Agreements, caused Ascension to convert the above notes into shares of Series E

Preferred Stock and the interest due on these notes to be converted into shares of Series

E-1 Preferred Stock.  The terms of the Series E Preferred Stock were identical to that of

the Bridge Financing Agreements in that it had a liquidation preference of 300% of the

purchase price of $2.39 per share (i.e., $7.17 per share) plus paid an annual dividend of

10% of the original purchase price.   Thus, the Frazier Investors were able to convert debt worth $14.25 million into shares worth $42.75 million, plus 10% interest, in the event of a merger.

32.     In an effort to raise an additional $1.75 million, the Frazier Directors then caused Ascension to issue another stock offering of Series E Preferred Stock (under the same terms as the Series E purchased through the debt conversion) but only made those shares available to certain investors (the "Series E Financing").   This financing was expressly used to facilitate the sale of Ascension.   The Series E stock sold through the Series E Financing also had a stock price of $2.39 per share and a liquidation preference of $7.17 per share (equal to 300% of the $2.39 purchase price) plus paid an annual dividend of 10% of the original purchase price.[17]

33.     During the Series E Financing, Frazier Healthcare V, LP purchased over 85% of the offered Series E Preferred Stock.   The Frazier Investors and Frazier Directors also permitted the same "select co-investors," the Mayo Clinic and CMC Master Fund, as well as Dr. Jerome Klawitter (Ascension's founder), to participate in the Series E Financing to a small degree.

34.     The 300% redemption rate of the Bridge Financing Agreements and the Series E Financing was significantly above redemption values afforded previous stock offerings. The Fourth Article of the Ascension Certificate of Incorporation sets forth the liquidation preference and amounts of the various classes of stock.  Series A stock is redeemed at $1.72 per share.  Series B stock is redeemed at $1.34 per share.  Series C is redeemed at $1.68 per share.  Series D redeemed at $2.39 per share.  Series E was

---

[17]  The Bridge Financing Agreements and the Series E Financing are collectively referred to as the "Financing Agreements."

afforded an excessive $7.17 redemption rate per share (300%).   The Frazier Directors and Frazier Investors thus assigned to the Series E stock a redemption rate three times that of the other highest offerings (Series D).   This rate, coupled with a liquidation preference above all other stock, had the practical effect of extracting all equity in Ascension solely to holders of the Series E stockholders--the Frazier Investors.

35.      The Frazier Directors and Frazier Investors thus caused Ascension to overpay for assets Ascension received through the Financing Agreements, thereby causing the minority stockholders, including plaintiffs, to lose all of the economic value of their stock.  This was a wrongful extraction from the minority stockholders, and redistribution to the controlling stockholders (the Frazier Investors) all of the equity in Ascension held by the minority stockholders.

36.      The plaintiffs were not afforded full participation in the Financing Agreements. As noted above, the Bridge Financing Agreements concerned a series of loans to Ascension totaling $16.25 million dollars.  Frazier Healthcare V contributed $14.25 million (or over 87%) of that amount, and the remainder came from the Mayo Clinic and Charter Ventures.   The Series E Financing concerned investment of an additional $1.75 million dollars, over 86% of which was eventually invested by Frazier Healthcare V, for a total of $18 million dollars.

37.      Through a letter dated April 29, 2011, plaintiffs were informed that they could request participation in the Series E Financing, which, again, represented only $1.75 million out of the $18 million in total acquired by Ascension through all of the Financing Agreements.  However, plaintiffs were explicitly informed they had no contractual right to participate in the Series E Financing.  Plaintiffs were further informed, through this letter, that even if they wished to participate in the Series E Financing, the Frazier

Directors and Frazier Investors, through their control of Ascension, had sole discretion to "modify, amend, delay and/or withdraw all or a portion of the Debt Financing and/or accept or reject in whole or in part any prospective purchase of the notes and warrants."[18]

38.    Upon information and belief, the Frazier Investors further restricted the minority stockholders' access to the Series E Financing by using the percentage of stock that each investor owned in Ascension as a limit on their investment.  The minority stockholders were only permitted to invest an amount that corresponded to their ownership interest in Ascension.  Thus, if a select investor owned stock worth 1% of Ascension, that investor was only permitted to invest 1% of the $18 million total or $180,000.  This was a further restriction on the plaintiffs' ability to participate in the Financing Agreements that did not apply to the Frazier Investors.  No other stockholder was permitted to participate in the Financing Agreements in the same manner and to the same degree as the Frazier Investors.

39.    Plaintiffs were further denied access to material facts concerning the Series E Financing.  Although plaintiffs were informed that Ascension was in communications with a prospective buyer, plaintiffs were explicitly not informed of the identity of that buyer or the proposed terms of any sale/merger of Ascension.[19]  Moreover, plaintiffs raised concerns to the defendants of the usurious and unlawful nature of the Financing Agreements.  However, the Frazier Investors and Frazier Directors refused to address

---

[18]   A copy of the April 29, 2011 letter is attached as Exhibit 6.
[19] In the Form D filed with the Securities and Exchange Commission on July 17, 2011, in connection with the Series E offering, Ascension represented that the stock issuance was not being made in connection with the sale or merger of the company.  On information and belief, the Frazier Investors and the Frazier Directors were well aware that the merger was imminent, and the Series E debt conversion was transacted as part and parcel of the merger to be completed the following month.

these concerns, instead allowing plaintiffs an extremely limited amount of time to perform due diligence on the offering.  Plaintiffs therefore were denied the information and access necessary to fully and meaningfully participate in the Bridge Financing Agreements and the Series E Financing.  As a result of the lack of information provided, the short deadlines imposed, the apparent impropriety of the transactions, and the limits on opportunity to fully participate, plaintiffs did not participate in either Financing Agreement.

40.     The Frazier Directors and Frazier Investors used the capital raised by the Financing Agreements to attract a potential buyer and provide required capital to Ascension so that a sale/merger could be completed.  In fact, the Series E Financing was offered at a time when Ascension was actively seeking and expecting to receive multiple bids for the company and was to provide capital to effectuate that sale.

41.     The Frazier Investors and Frazier Directors engaged in this conduct so that when Ascension was sold or merged with another company, Frazier Healthcare V would obtain a 300% return on their investment into Ascension through the Bridge Financing Agreements and the Series E Financing.  This 300% return amounted to all of the equity of Ascension and guaranteed that upon a sale/merger of Ascension, the Frazier Investors (controlling stockholders) would reap millions, while plaintiffs (minority stockholders) would get nothing.

42.     Upon information and belief, these actions by the Frazier Directors and Frazier Investors were done without the assent of the disinterested stockholders, without a fairness opinion being prepared to set forth the clear conflict of interest between the Frazier Directors, the Frazier Investors, and Ascension, and without a stockholder meeting to explain and fully disclose said actions.

43.     Upon information and belief, on July 5, 2011, the Frazier Investors unilaterally voted as majority and controlling stockholders in Ascension to approve the Series E Financing and to waive the conflict arising from Alan Frazier's role on the Ascension Board of Directors and his ownership interest in Frazier Healthcare V and/or its affiliates.  This action was unilaterally taken by the Frazier Investors and not by disinterested stockholders.  Further, plaintiffs did not participate in this vote and did not receive notice of this action until August 23, 2011.

44.     In an effort to further their scheme to improperly extract equity from the minority stockholders, the Frazier Investors and Frazier Directors blocked efforts to avoid the sale of Ascension through capital infusion from other investors.  The Frazier Investors, in an effort to force a sale of Ascension, blocked an investment from Paul Capital, a private equity firm.  These arrangements would have saved Ascension as a viable company, but they would not have constituted a liquidation event triggering a 300% redemption of the Frazier Investors' E-Series shares.  Instead, the Frazier Investors used their position as majority stockholders to force a sale of Ascension on an expedited basis so as to cash out all of the equity that had been improperly extracted.  The Frazier Investors were ultimately successful when Ascension merged with Integra Lifesciences ("Integra").

45.     On August 27, 2011, at the direction of the Frazier Investors and the Frazier Directors, Ascension entered into an Agreement and Plan of Merger with Integra whereby Ascension agreed to become a wholly owned subsidiary of Integra.  The Frazier Investors, voting in concert and as majority stockholders, approved the merger with Integra.

46.     In the subsequent "Notice of Action by Written Consent" (the "Notice") issued by the company, Ascension advised plaintiffs and other minority stockholders that: (1) Integra would pay an "adjusted" purchase price of $54 million; (2) the Series E and Series E-1 stockholders, whose liquidation preference amounted to $56 million, would receive the entire proceeds; and (3) all other stockholders would have their shares cancelled and receive nothing.[20]  In listing the principal stockholders of the company, Ascension grouped all shares held by the Frazier Investors (59.6% of all outstanding shares and 86.3% of Series E and Series E-1 shares combined) as one unit under the heading "Frazier Healthcare Ventures," and it described Directors Nathan Every and Alan Frazier as "represent[ing] shares held of record by Frazier Healthcare Ventures."[21]

47.     The Notice also disclosed the following conflicts applicable to Defendants Alan Frazier and Nathan Every: "[e]ach of Alan Frazier and Nathan Every is a director of AOI [Ascension] and a member of the general partner of the general partner of Frazier Healthcare V, L.P. and a limited partner of the general partner of Frazier Healthcare V, L.P.  In addition, Mr. Frazier is the president of the managing member of the general partner of Frazier Healthcare III, LP and Frazier Affiliates III partner of Frazier Healthcare III, LP and Frazier Affiliates III, LP.  Together the Frazier affiliated entities own a majority of the outstanding stock of AOI [Ascension] as indicated on page 7 above and will receive a substantial portion of the Merger Consideration in connection with

---

[20] Plaintiffs question whether the $54 million was a fair price for the merger, since it conveniently covered nearly all of the Series E and Series E-1 liquidation preferences but none of the of the other preferred classes.  A copy of the Notice of Action is attached as Exhibit 7.

[21] The Notice specifically states that Frazier Healthcare V, Frazier Healthcare III, and Frazier Affiliates are collectively referred to as "Frazier Healthcare Ventures."  The Notice also showed the Brown Foundation as the second-largest stockholder with 9.38% of all outstanding shares, now worth nothing because they were not part of the E Series or E-1 Series.

the Merger."[22]  Further, it revealed that Defendant Guy Mayer, having voted to approve the merger, received an approximately $3 million payment from the merger proceeds.[23] The Notice specifically demonstrates the Frazier Investors were majority and controlling stockholders and the Frazier Directors, through their financial ties with the Frazier Investors, received a "substantial portion" of the merger proceeds.[24]

48.    The Notice also informed that the Frazier Directors "and their affiliates together control approximately (i) 67.96% of the outstanding shares of the Company's Series A Preferred Stock, Series B Preferred Stock, Series C Preferred Stock, Series D Preferred Stock, Series E Preferred Stock, and Series E-1 Preferred Stock, voting together as a single class and on an as converted to Common Stock basis and (ii) 66.58% of the outstanding shares of the Company's Common Stock and Preferred Stock, voting together as a single class and on an as-converted to Common Stock basis. These stockholders, acting together, are able to exercise substantial control over AOI's [Ascension's] management and its affairs, including the approval of the transactions contemplated by the Merger."[25]  The Notice further list Defendants Guy Mayer, Nathan Every, Alan Frazier, and Jeff Nugent as each owning stock as a group in Ascension, and thus having interest in Ascension.[26]

49.    As noted above, only stockholders owning Series E and E-1 stock received money from the Integra merger.  This fact was well known to the Frazier Directors and Frazier Investors prior to entering into the merger.  The Notice states "the entire merger consideration will be paid to holders of Series E Preferred Stock and Series E-1 Preferred

---

[22]  Exhibit 7 at 8.
[23]  Exhibit D to Exhibit 7.
[24]  Id.
[25]  Exhibit 7 at 25.
[26]  Id. at 7.

Stock."[27]  In a letter to stockholders sent out by Ascension on September 12, 2011, Ascension reaffirmed this fact and informed stockholders that they would receive no consideration for their common stock during the merger with Integra.[28]  In September 2011, Ascension completed the merger with Integra, and the proceeds were wholly consumed by the Series E and Series E-1 shareholders.  The Frazier Investors and Frazier Directors were thus successful in their equity extraction scheme and reaped millions in profits through the 300% redemption values of the Series E stock.  Plaintiffs, and other minority stockholders of Ascension, received nothing.

50.     In August of 2011, the Brown Foundation requested, pursuant to Title 8, Section 220 of the Delaware Code, to view the records of Ascension for a lawful purpose but was unlawfully denied access to those records until it agreed to enter into a non-disclosure agreement which would have prohibited the Brown Foundation from using said information in a shareholder derivative suit.  Access was denied even though investigating corporate mismanagement is a proper purpose for seeking access to Ascension's books and records. *See King v. VeriFone Holdings, Inc.*, 12 A.3d 1140, 1145 (Del. 2011).

51.     The Frazier Directors had a material financial interest in obtaining the 300% profits of the Bridge Financing Agreements and Series E Financing and were incapable of acting independently.  The Frazier Directors were beholden to and dominated by Frazier Investors, and it was for their interest, not that of the minority stockholders, that the Frazier Directors approved the Bridge Financing Agreements, the Series E Financing, the blocking of the investment by Paul Capital, and the sale/merger of

---

[27]  Id. at 14.
[28]  A copy of this letter is attached as Exhibit 8.

Ascension to Integra.  These decisions were not the product of a valid exercise of business judgment but done in an effort to effectuate the equity extraction scheme perpetuated by the Frazier Investors and the Frazier Directors.

**V.**
**Count I- Breach of Fiduciary Duties by Frazier Directors**

52.     As part of Count I, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

53.     The Brown Foundation and Chambers Medical are major stockholders of Ascension and have collectively invested millions into Ascension during its existence. As members of the Board of Directors of Ascension, the Frazier Directors owe fiduciary duties to the plaintiffs including the duties of loyalty, due care, candor, good faith and fair dealing.  Specifically the Frazier Directors had a duty not to cause Ascension to effect a transaction that would benefit the majority stockholders (Frazier Investors) at the expense of the minority stockholders such as plaintiffs.

54.     As previously alleged, the Frazier Directors intentionally and/or negligently violated their fiduciary duties in their management of Ascension.   The Frazier Directors violated their fiduciary duties by colluding with the Frazier Investors and causing Ascension to overpay for assets it received through the Bridge Financing Agreements and Series E Financing with terms which were wholly in the favor of the Frazier Investors and to the detriment of the plaintiffs.

55.     The Frazier Directors' actions were not in the best interest of plaintiffs or the other minority stockholders, but rather in the best interest of the Frazier Investors and the Frazier Directors, who, after Ascension's merger with Integra, gained 300% off their investments into Ascension made through the Bridge Financing Agreements and Series

E Financing.  The Frazier Directors further stood to profit due to their close financial ties with Frazier Healthcare Ventures and the Frazier Investors.  The result of these actions was to improperly transfer the economic value in Ascension held by plaintiffs to the Frazier Investors.

56.     Thus, through the actions of the Frazier Directors, the plaintiffs' stock was rendered essentially worthless while the Frazier Investors were correspondingly enriched.  Plaintiffs therefore suffered significant damages as a result of the breach of the Frazier Directors' fiduciary duties.

57.     All of the aforementioned actions and failures to act by the Frazier Directors constituted a breach of their fiduciary duties to the Brown Foundation and Chambers Medical, and unjustly enriched the Frazier Investors and Frazier Directors at the expense of the Brown Foundation and Chambers Medical.

## Count II- Breach of Fiduciary Duties by Frazier Investors

58.     As part of Count II, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

59.     The Frazier Investors, operating under common ownership and management, are the major stockholders in Ascension and acted jointly to acquire a 52.3% ownership interest in Ascension through the Series D Financing.  As majority stockholders, the Frazier Investors exercised managerial control over Ascension and acted with common purpose.  The Frazier Investors were thus controlling shareholders.  As such, the Frazier Investors had a fiduciary duty to the plaintiffs as minority stockholders, including duties of loyalty, due care, candor, good faith and fair dealing.  Specifically the Frazier Investors had a duty not to cause Ascension to effect a transaction that would benefit the Frazier Investors at the expense of the minority stockholders, including plaintiffs.

60.     The Frazier Investors violated their fiduciary duties to plaintiffs by wrongfully extracting all of plaintiffs' stockholder equity in Ascension by entering into and causing Ascension to enter into the Bridge Financing Agreements and Series E Financing. Because the Series E Preferred Stock had a liquidation preference above all other stock and carried a 300% return, the Frazier Investors ensured that any proceeds of a sale or merger of Ascension would go almost wholly to the Frazier Investors.  The Frazier Investors, through their control of Ascension and the Frazier Directors, caused Ascension to overpay for assets Ascension received through the Financing Agreements. This resulted in the minority stockholders, including plaintiffs, losing all of the economic value of their stock.  This value was expropriated directly by the Frazier Investors, who then used their managerial control to cause Ascension to use the proceeds from the Bridge Financing Agreements and the Series E Financing to effectuate a sale of Ascension.  The Frazier Investors subsequently blocked any efforts to save Ascension other than through a sale or merger by preventing the infusion of additional capital from entities such as Paul Capital.  The above was not done in the best interest of minority stockholders but in an effort to ensure the Frazier Investors obtained the 300% return from liquidation of its Series E Preferred stock.

61.     The proceeds generated by the merger between Ascension and Integra were wholly consumed by the  redemption of Series E and Series E-1 Preferred stock.  Thus, through the actions of the Frazier Investors, plaintiffs' stock was rendered essentially worthless, and plaintiffs received none of the proceeds generated from the merger of Ascension with Integra.  At the same time, the Frazier Investors received nearly all of the equity generated from the merger of Ascension.  Plaintiffs therefore suffered significant damages as a result of the breach of Frazier Investors' fiduciary duties.

62.     Through the aforementioned actions, the Frazier Investors wrongfully extracted economic value from the minority stockholders, and redistributed it to the controlling stockholders (the Frazier Investors).  This was a breach of the fiduciary duties owed by the Frazier Investors as controlling stockholders to the plaintiffs, and unjustly enriched the Frazier Investors at the expense of the plaintiffs.

## Count III- Minority Shareholder Oppression

63.     As part of Count III, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

64.     The Frazier Investors' and Frazier Directors' conduct also constituted minority shareholder oppression.  Defendants' actions violated the reasonable expectations held by plaintiffs when they were induced to invest in Ascension—namely, that they would be treated fairly and honestly by the majority shareholders and management, and that they would share in any future profits in accordance with their respective holdings. Moreover, the Frazier Investors' and Frazier Directors' wrongful actions constituted a clear departure from the standards of fair dealing and fair play, upon which plaintiffs as investors were entitled to rely.  Defendants' oppressive conduct caused plaintiffs to lose their entire investments in Ascension while reaping excessive profits for Defendants.

## Count IV- Conspiracy

65.     As part of Count IV, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

66.     The Frazier Investors, as controlling stockholders, owed fiduciary duties to plaintiffs as minority stockholders, and were aware of the fiduciary duties owed to plaintiffs by the Frazier Directors.

67.     The Frazier Directors owed fiduciary duties to plaintiffs as stockholders in Ascension, and were aware of the fiduciary duties owed to the plaintiffs by the Frazier Investors.

68.     The Frazier Directors and Frazier Investors conspired to violate the fiduciary duties the other held toward plaintiffs.  The defendants conspired to transfer all of the equity in Ascension from the public stockholders to the Frazier Investors and then cash-out that equity through a sale/merger of Ascension.  The Frazier Directors and Frazier Investors were well aware their actions would, and did, result in an improper extraction of plaintiffs' equity in Ascension and redistribution to the Frazier Investors but chose to do so anyway.

69.      The result of the actions of the Frazier Directors and Frazier Investors was to wrongfully expropriate the plaintiffs' equity in Ascension to redistribute it to the Frazier Investors.  This constituted a breach of fiduciary duty and minority shareholder oppression.  The Frazier Investors and Frazier Directors thus conspired to violate the fiduciary duties the other owed to the plaintiffs and to engage in oppressive conduct toward the plaintiffs, and thus each is responsible for the actions of the other.

## Count V- Aiding and Abetting

70.     As part of Count V, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

71.     The Frazier Investors, as controlling stockholders, owed fiduciary duties to plaintiffs as minority stockholders, and were aware of the fiduciary duties owed to plaintiffs by the Frazier Directors.

72.     The Frazier Directors owed fiduciary duties to plaintiffs as stockholders in Ascension, and were aware of the fiduciary duties owed to the plaintiffs by the Frazier Investors.

73.     The Frazier Directors aided the Frazier Investors in violating their fiduciary duties held toward plaintiffs.  Likewise, the Frazier Investors aided the Frazier Directors in violating their fiduciary duties held toward the plaintiffs.  The defendants assisted each other in extracting all of plaintiffs' equity in Ascension and redistributing it to the Frazier Investors.  This resulted in an improper transfer of plaintiffs' equity in Ascension to the Frazier Investors, and was done through and with the assistance and aid of the other.

74.      These actions constituted a breach of fiduciary duty and minority shareholder oppression.  The Frazier Investors and Frazier Directors aided and abetted each other in violating the fiduciary duties the other owed to the plaintiffs and engaging in oppressive conduct toward the plaintiffs, and thus each is responsible for the actions of the other.

**Count VI- Unjust Enrichment**

75.     As part of Count VI, plaintiffs reallege each and every allegation set forth in the preceding paragraphs.

76.     As a result of the actions listed above, the Frazier Investors and Frazier Directors were unjustly enriched to the detriment of the plaintiffs and the other stockholders in Ascension.  The Frazier Investors' and Frazier Directors' enrichment (in the form of equity later converted to cash through the merger) was the direct result and cause of plaintiffs' corresponding impoverishment.  The Frazier Directors, through their financial ties with the Frazier Investors likewise reaped the benefits of the enrichment. The Frazier Investors and Frazier Directors had no justification for extracting plaintiffs'

24

equity through the Bridge Financing Agreements and Series E Financing, and their actions violated fundamental principles of justice, equity, and good conscience. Because plaintiffs have no adequate remedy at law, they are entitled to equitable relief to rectify defendants' unjust enrichment.

## VII.
## Jury Demand

77.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand trial by jury in connection with the claims herein.

## VIII.
## Relief Requested

WHEREFORE, petitioners the Brown Foundation and Chambers Medical pray that this Honorable Court issue a judgment in favor of plaintiffs against the Frazier Directors and the Frazier Investors awarding all damages and equitable relief to plaintiffs as are reasonable in the premises, together with legal interest thereon from date of judicial demand until paid, attorney's fees, plus all costs of these proceedings.

Respectfully submitted,

HYMEL DAVIS & PETERSEN

s/Joseph E. Blackwell
Joseph E. Blackwell, TX Bar #24045504
10602 Coursey Boulevard
Baton Rouge, LA  70816
Telephone: 225-298-8118
Fax: 225-298-8119
jblackwell@hymeldavis.com

HOHMANN, TAUBE & SUMMERS, LLP
Robert A. Summers
Texas Bar No. 19506800
Cleveland R. Burke
Texas Bar No. 24064975
100 Congress Ave., 18th Floor
Austin, Texas  78701
Telephone: 512-472-5997
Fax: 512-482-5248

**Counsel for the Brown Foundation
and Chambers Medical
Foundation**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March, 2012, the above and foregoing

was electronically filed with the Clerk of Court using the CM/ECF system.  Notice of this

filing will be sent to all counsel of record by operation of the court's electronic filing

system.

s/Joseph E. Blackwell
Joseph E. Blackwell, TX Bar #24045504
10602 Coursey Boulevard
Baton Rouge, LA  70816
Telephone: 225-298-8118
Fax: 225-298-8119
jblackwell@hymeldavis.com